**F I L E D**
CLERK, U.S. DISTRICT COURT

10/7/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RYO _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>              v.<br><br>ARMAN MELIK,<br>  aka "Arman Melikyan,"<br>  aka "Armen Melikyan<br>  aka "Armen Melik," and<br>ARMEN MARD,<br><br>        Defendants. | CR 2:25-cr-00808-JFW<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 1957: Money Laundering; 18 U.S.C. §§ 981 and 982, 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.  <u>DEFENDANTS AND THEIR ENTITIES</u>

1.  Defendant ARMAN MELIK, also known as "Arman Melikyan," "Armen Melikyan," and "Armen Melik," resided in Tujunga, California, within the Central District of California.

2.  Defendant ARMEN MARD resided in Glendale, California, within the Central District of California.

3. ASAP Xpress was a company with no known registration in California.

4. Avalon Services, LLC ("Avalon") was a company with no known registration in California.

5. Blue One Management LLC ("Blue One") was a company incorporated in New Jersey in 2012 and in California in 2016.

6. New Prospective, LLC ("New Prospective") was a company incorporated in Wyoming in 2018 and in California in October 2021.

7. O.R. was an individual whose identity is known to the Grand Jury.

8. V.B. was an individual whose identity is known to the Grand Jury.

B.    THE SMALL BUSINESS ADMINISTRATION

9. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small business and by assisting in the economic recovery of communities after disasters.

C.    THE ECONOMIC INJURY DISASTER LOAN PROGRAM

10. The SBA provided financial assistance to small businesses following a declared disaster. One of the programs through which the SBA provided such assistance is the Economic Injury Disaster Loan ("EIDL") Program. Under the EIDL Program, the SBA could make loans to eligible small businesses located in a disaster area that suffered substantial economic injury due to a disaster.

11. In or about March 2020, the President of the United States determined that the COVID-19 pandemic was of sufficient severity and

magnitude to warrant an emergency disaster determination under section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5207 (the Stafford Act). Consequently, the SBA began providing funding to help small businesses recover from the economic impacts of the COVID-19 pandemic, including an advance of up to $10,000 that could be requested immediately.

12.   To obtain a COVID-19 EIDL loan, a qualifying business (through its authorized representative) was required to submit an EIDL loan application through SBA's online web portal.  In the EIDL loan application, the applicant was required to provide, among other information: (a) its number of employees as of January 31, 2020; and (b) its gross revenue for the twelve months preceding January 31, 2020.

13.   As part of the EIDL loan application, the applicant was also required to answer various background questions and make certain certifications to be eligible to obtain the EIDL loan.  One such certification required the applicant to affirm that "all information in [the] application and submitted with [the] application [was] true and correct to the best of [the applicant's] knowledge and that [the applicant] will submit truthful information in the future."  The application also included a warning that "any false statement or misrepresentation to the SBA [could] result in criminal . . . sanctions including, but not limited to . . . fines and imprisonment, or both . . . ."

14.   After being approved for an EIDL loan by the SBA the applicant was required to sign a "Loan Authorization and Agreement" to receive disbursement of the loan in which the applicant agreed to

use all EIDL loan proceeds "solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter" and to pay certain Uniform Commercial Code lien filing fees and handling charges.

D.    THE PAYCHECK PROTECTION PROGRAM

15.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

16.    To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "Borrower was in operation on February 15, 2020 and had employees for whom Borrower paid salaries and payroll taxes or paid independent contractors . . . ."  Another such certification required the applicant to affirm that "[a]ll proceeds of the Loan will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments . . . ."  The applicant (through its authorized representative) was also required

to acknowledge that "if the funds are knowingly used for unauthorized purposes, the federal government may hold Borrower and/or Borrower's authorized representative legally liable, such as for charges of fraud."  In the PPP loan application, the applicant was required to state, among other things, its average monthly payroll expenses. These figures were used to calculate the amount of money the small business was eligible to receive as a PPP loan.  In addition, the applicant was required to provide documentation showing its payroll expenses.

17.  A PPP loan application was received and processed, in the first instance, by a participating financial institution, such as Bank of America.  PPP loan applications were electronically submitted, and caused to be submitted, by the borrower and received through SBA servers located in Virginia and/or Oregon.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA.

18.  PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.

E.    RELEVANT FINANCIAL INSTITUTIONS

19.  Bank of America was a financial institution based in North Carolina.  Bank of America was an SBA-approved participating lender of PPP loans.

20.  Wells Fargo Bank, N.A. ("Wells Fargo") was a financial institution based in California.

21.  JP Morgan Chase Bank, N.A. ("JPMC") was a financial institution based in New York.

22.  USAA Federal Savings Bank was a financial institution based in Texas.

COUNT ONE

[18 U.S.C. § 1349]

[DEFENDANTS MELIK AND MARD]

23.    The Grand Jury hereby realleges paragraphs 1 through 22 of this Indictment as though fully set forth herein.

A.    OBJECT OF THE CONSPIRACY

24.    Beginning in or about March 2020 and continuing through at least in or around July 2022, in Los Angeles County, within the Central District of California, defendant ARMAN MELIK, also known as "Arman Melikyan," "Armen Melikyan," and "Armen Melik," and defendant ARMEN MARD, conspired with each other and with others known and unknown to the Grand Jury, to commit wire fraud, in violation of Title 18, United States Code, Section 1343, in connection with a fraudulent PPP and EIDL loan scheme.

B.    MANNER AND MEANS OF THE CONSPIRACY

25.    The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

        a.    Defendants MELIK and MARD would acquire the personally identifying information of other persons, including O.R. and V.B. (the "identity theft victims").

        b.    Defendants MELIK and MARD would submit and cause to be submitted online applications for EIDL and PPP loans to the SBA and to approved SBA lenders, including Bank of America, for their own purported businesses and for businesses purportedly owned by the identity theft victims.

        c.    Defendants MELIK and MARD would knowingly make and cause to be made material false and fraudulent statements in connection with the EIDL and PPP loan applications, including false

statements about: (i) the company's number of employees; (ii) the company's average monthly payroll; (iii) the truth and accuracy of all the information and documents submitted in or with the applications, including attached Internal Revenue Service ("IRS") forms; (iv) the intended use of the loan proceeds, including false certifications that the loan proceeds would be used for permissible business purposes; and (v) the identity of the person applying for the loan.

d.    After receiving PPP and EIDL loan funds, defendants MELIK and MARD, together with other coconspirators, would transfer and cause to be transferred the proceeds of the fraudulently obtained loan to accounts defendants MELIK, MARD, and their coconspirators controlled, and to other recipients, for purposes that were not permitted under the PPP and EIDL programs.

e.    Defendants MELIK and MARD, together with their coconspirators, would use the fraudulently obtained PPP and EIDL funds for expenses that were not permitted under the PPP and EIDL programs, including to pay personal credit card bills, make real estate purchases, transfer the funds to related parties, and convert the funds to their own personal use.

C.    OVERT ACTS

26.    In furtherance of the conspiracy and to accomplish its object, defendants MELIK and MARD, together with their coconspirators, committed and willfully caused others to commit the following overt acts, in Los Angeles County, in the Central District of California, and elsewhere:

**Blue One EIDL Loan**

<u>Overt Act No. 1:</u>    On or about March 31, 2020, defendant MARD submitted, and caused to be submitted, to the SBA an EIDL loan application in Blue One's name, which application (a) falsely claimed that Blue One had gross revenue of $390,000 for the twelve months prior to January 31, 2020; (b) falsely claimed that Blue One had two employees as of January 31, 2020; (c) falsely certified that all the funds sought would be used solely as working capital to alleviate economic injury caused by the COVID-19 pandemic; and (d) falsely certified that all information in or submitted with the application was true and correct.

<u>Overt Act No. 2:</u>    On or about July 22, 2020, defendant MARD submitted, and caused to be submitted, to the SBA a Loan Authorization and Agreement, in which defendant MARD falsely certified that he would use all loan proceeds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic, when, in fact, as defendant MARD then knew, he intended to use at least some of the funds to pay for personal real estate, his own personal expenses, and the personal expenses of others.

<u>Overt Act No. 3:</u>    On or about July 22, 2020, defendant MARD caused the SBA to wire $149,000 in EIDL funds to a Wells Fargo business checking account ending in 0001 ("Wells Fargo 0001") that defendant MARD maintained in Blue One's name.

<u>Overt Act No. 4:</u>    On or about July 30, 2020, defendant MARD transferred $1,000 from Wells Fargo 0001 (Blue One) to a Wells Fargo business checking account ending in 7418 ("Wells Fargo 7418") that defendant MARD maintained in Blue One's name.

Overt Act No. 5:    On or about July 31, 2020, defendant MARD transferred $129,000 from Wells Fargo 0001 (Blue One) to Wells Fargo 7418 (Blue One).

Overt Act No. 6:    On or about December 22, 2020, defendant MARD transferred $9,500 from Wells Fargo 7418 (Blue One) to Wells Fargo 0001 (Blue One).

Overt Act No. 7:    On or about January 13, 2021, defendant MARD transferred $75,000 from Wells Fargo 7418 (Blue One) to a Wells Fargo business checking account ending in 0063 ("Wells Fargo 0063") that defendant MARD maintained in New Prospective's name.

Overt Act No. 8:    On or about January 14, 2021, defendant MARD transferred $1,500 from Wells Fargo 7418 (Blue One) to Wells Fargo 0063 (New Prospective).

Overt Act No. 9:    On or about January 14, 2021, defendant MARD transferred $76,000 via wire transfer from Wells Fargo 0063 (New Prospective) to a Wells Fargo account in the name of Premium Title of California to pay costs related to a property in West Covina, California.

Overt Act No. 10:    On or about January 14, 2021, defendant MARD transferred $2,250 from Wells Fargo 7418 (Blue One) to defendant MARD's Wells Fargo personal bank account ending in 6182 ("Wells Fargo 6182").

Overt Act No. 11:    On or about January 19, 2021, defendant MARD made a $500 payment from Wells Fargo 6182 (MARD) for a Synchrony Bank credit card in defendant MARD's name.

Overt Act No. 12:    On or about January 20, 2021, defendant MARD transferred $2,000 from Wells Fargo 7418 (Blue One) to Wells Fargo 6182 (MARD).

Overt Act No. 13:   On or about January 22, 2021, defendant MARD transferred $2,500 from Wells Fargo 7418 (Blue One) to Wells Fargo 6182 (MARD).

Overt Act No. 14:   On or about January 25, 2021, defendant MARD made a $251.23 payment from Wells Fargo 6182 (MARD) for a Toyota Financial Lease in defendant MARD's name.

Overt Act No. 15:   On or about February 1, 2021, defendant MARD made a $472.67 payment from Wells Fargo 6182 (MARD) for a Chase credit card in the name of A.M., an individual whose identity is known to the Grand Jury.

Overt Act No. 16:   On or about February 1, 2021, defendant MARD made a $500 payment from Wells Fargo 6182 (MARD) for a Barclays credit card in A.M.'s name.

Overt Act No. 17:   On or about February 2, 2021, defendant MARD made a $500 Best Buy payment for A.M. from Wells Fargo 6182 (MARD).

Overt Act No. 18:   On or about February 2, 2021, defendant MARD made a $500 Best Buy payment for S.K., an individual whose identity is known to the Grand Jury, from Wells Fargo 6182 (MARD).

Overt Act No. 19:   On or about February 2, 2021, defendant MARD made a $496 payment from Wells Fargo 6182 (MARD) for a Bank of America Visa credit card in defendant MARD's name.

**Avalon PPP Loan**

Overt Act No. 20:   On or about June 2, 2020, defendants MELIK and MARD submitted, and caused to be submitted, a PPP loan application to Bank of America in Avalon's name, which application (a) falsely claimed that Avalon had a total annual payroll of $4,295,892 in 2019; (b) falsely claimed that Avalon was an operating company and had 79 employees as of February 15, 2020; (c) falsely

11

represented that O.R. was the owner of Avalon; (d) falsely certified that all information in or with the application was true and correct; and falsely certified that all funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under applicable PPP rules.

Overt Act No. 21:   On or about June 19, 2020, defendants MELIK and MARD electronically submitted, and caused to be submitted, a Promissory Note for a PPP loan of $894,977 to Bank of America.  In the Promissory Note, defendants MELIK and MARD falsely represented that (a) Avalon was eligible to receive a PPP loan; (b) Avalon was an operating company as of February 15, 2020; (c) Avalon had employees for whom Avalon paid salaries and payroll taxes or paid independent contractors; (d) all loan proceeds would be used to retain workers and maintain payroll, or for other business-related purposes, as specified under applicable PPP rules; (e) Avalon had provided to Bank of America true, correct, and complete documentation demonstrating that Avalon had employees for whom Avalon paid salaries and payroll taxes; and (f) Avalon had provided to Bank of America all available documentation verifying Avalon's average monthly payroll costs for 2019.

Overt Act No. 22:   On or about June 19, 2020, defendant MELIK and MARD caused Bank of America to transfer $894,977 in PPP loan funds into a Bank of America business checking account ending in 9653 ("Bank of America 9653") maintained in Avalon's name and controlled by defendant MARD.

Overt Act No. 23:   On or about June 29, 2020, defendants MELIK and MARD caused Avalon to make a $4,761.69 online payment from Bank

of America 9653 (Avalon) to pay a Macy's credit card in defendant MELIK's wife's name.

Overt Act No. 24:    On or about June 29, 2020, defendants MELIK and MARD caused Avalon to make a $2,670.13 payment from Bank of America 9653 (Avalon) for a Nordstrom credit card in defendant MELIK's wife's name.

Overt Act No. 25:    On or about July 3, 2020, defendants MELIK and MARD caused Avalon to make a $1,039.25 payment from Bank of America 9653 (Avalon) to BMW Financial for defendant MELIK.

Overt Act No. 26:    On or about July 16, 2020, defendants MELIK and MARD caused Avalon to issue a $99,000 check from Bank of America 9653 (Avalon) to First American Title.

Overt Act No. 27:    On or about August 6, 2020, defendants MELIK and MARD caused Avalon to issue a $52,000 check from Bank of America 9653 (Avalon) to First American Title.

Overt Act No. 28:    On or about August 6, 2020, defendants MELIK and MARD caused Avalon to issue a $45,000 check from Bank of America 9653 (Avalon) to First American Title.

Overt Act No. 29:    On or about November 4, 2020, defendants MELIK and MARD caused Avalon to make a $1,039.25 payment from Bank of America 9653 (Avalon) to BMW Financial for defendant MELIK.

Overt Act No. 30:    On or about December 7, 2020, defendants MELIK and MARD caused Avalon to make a $1,039.25 payment from Bank of America 9653 (Avalon) to BMW Financial for defendant MELIK.

**Avalon EIDL Loan**

Overt Act No. 31:    On or about June 23, 2020, defendants MELIK and MARD submitted, and caused to be submitted, to the SBA an EIDL loan application in Avalon's name, which application (a) falsely

13

claimed that Avalon had gross revenue of $1,537,000 for the twelve months prior to January 31, 2020; (b) falsely claimed that Avalon had 11 employees as of January 31, 2020; (c) falsely certified that all the funds sought would be used solely as working capital to alleviate economic injury caused by the COVID-19 pandemic; and (d) falsely certified that all information in or with the application was true and correct.

Overt Act No. 32:   On or about June 25, 2020, defendants MELIK and MARD submitted, and caused to be submitted, to the SBA a false and fraudulent copy of O.R.'s California driver's license.

Overt Act No. 33:   On or about June 25, 2020, defendants MELIK and MARD submitted, and caused to be submitted, to the SBA a Loan Authorization and Agreement, in which defendants MELIK and MARD falsely certified that Avalon would use all loan proceeds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic, when, in fact, as defendants MELIK and MARD then knew, they intended to convert at least some of the funds for their own personal use and to transfer at least some of the funds to related parties.

Overt Act No. 34:   On or about June 29, 2020, defendants MELIK and MARD caused the SBA to wire $110,400 in EIDL funds to a JPMorgan Chase business checking account ending in 1074 ("JPMC 1074") maintained in O.R.'s name and controlled by defendants MELIK and MARD.

Overt Act No. 35:   On or about July 7, 2020, defendants MELIK and MARD caused the SBA to wire $10,000 in EIDL advance funds to JPMC 1074 (O.R.).

<u>Overt Act No. 36:</u>  On or about July 15, 2020, defendants MELIK and MARD caused a $21,000 check to be issued from JPMC 1074 (O.R.) to A.K., an individual whose identity is known to the Grand Jury.

<u>Overt Act No. 37:</u>  On or about August 8, 2020, defendants MELIK and MARD caused a $23,400 check to be issued from JPMC 1074 (O.R.) to G.H., an individual whose identity is known to the Grand Jury.

<u>Overt Act No. 38:</u>  On or about December 29, 2020, defendants MELIK and MARD caused a $643 payment to be made from JPMC 1074 (O.R.) for a Chase credit card ending in 2749.

<u>Overt Act No. 39:</u>  On or about September 22, 2021, defendants MELIK and MARD caused a $1,273 payment to be made from JPMC 1074 (O.R.) for a Chase credit card ending in 2749.

**<u>V.B. EIDL Application</u>**

<u>Overt Act No. 40:</u>  On or about July 12, 2020, defendant MARD submitted, and caused to be submitted, to the SBA an EIDL loan application in the name of a sole proprietorship in V.B.'s name, which application (a) falsely claimed that V.B. had gross revenue of $133,802 for the twelve months prior to January 31, 2020; (b) falsely claimed that V.B. had three employees as of January 31, 2020; (c) falsely certified that all the funds sought would be used solely as working capital to alleviate economic injury caused by the COVID-19 pandemic; and (d) falsely certified that all information in or with the application was true and correct.

<u>Overt Act No. 41:</u>  On or about August 5, 2020, defendant MARD submitted, and caused to be submitted, to the SBA a Loan Authorization and Agreement in which defendant MARD falsely certified that V.B. would use all loan proceeds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic, when, in

fact, as defendant MARD then knew, he intended to use at least some of the funds to pay his own personal expenses and the personal expenses of others.

Overt Act No. 42:  On or about July 29, 2020, defendant MARD caused the SBA to wire $66,900 in EIDL funds to a USAA Federal business checking account ending in 2227 ("USAA 2227") maintained in V.B.'s name and controlled by defendant MARD.

Overt Act No. 43:  On or about August 5, 2021, defendant MARD caused $4,886.84 to be transferred from USAA 2227 (V.B.) to make a mortgage payment for a residence on Brockmont Drive in Glendale, California (the "Brockmont Residence").

Overt Act No. 44:  On or about August 6, 2021, defendant MARD caused $540.71 to be transferred from USAA 2227 (V.B.) to make a payment for a Chase credit card ending in 4661.

Overt Act No. 45:  On or about December 22, 2021, defendant MARD caused $4,715.36 to be transferred from USAA 2227 (V.B.) to make a mortgage payment for the Brockmont Residence.

Overt Act No. 46:  On or about February 24, 2022, defendant MARD caused $4,715.36 to be transferred from USAA 2227 (V.B.) to make a mortgage payment for the Brockmont Residence.

Overt Act No. 47:  On or about July 7, 2022, defendant MARD caused $4,678.66 to be transferred from USAA 2227 (V.B.) to make a mortgage payment for the Brockmont Residence.

**New Prospective EIDL Application**

Overt Act No. 48:  On July 12, 2020, defendant MARD submitted, and caused to be submitted, to the SBA an EIDL loan application in New Prospective's name, which application (a) falsely claimed that New Prospective had gross revenue of $289,336 for the twelve months

prior to January 31, 2020; (b) falsely claimed that New Prospective had six employees as of January 31, 2020; (c) falsely certified that all the funds sought would be used solely as working capital to alleviate economic injury caused by the COVID-19 pandemic; and (d) falsely certified that all information in or with the application was true and correct.

Overt Act No. 49:   On or about July 31, 2020, defendant MARD submitted, and caused to be submitted, to the SBA a Loan Authorization and Agreement in which he falsely certified that he would use all loan proceeds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic, when, in fact, as defendant MARD then knew, he intended to use at least some of the funds to pay his own personal expenses and the personal expenses of coconspirators.

Overt Act No. 50:   On or about August 3, 2020, defendant MARD caused the SBA to wire $144,600 in EIDL funds to Wells Fargo 0063 (New Prospective).

Overt Act No. 51:   On or about August 5, 2020, defendant MARD transferred $119,950 from Wells Fargo 0063 (New Prospective) to a Wells Fargo business checking account ending in 7434 ("Wells Fargo 7434") that defendant MARD maintained in New Prospective's name.

Overt Act No. 52:   On or about October 8, 2020, defendant MARD issued two checks for $5,000 each from Wells Fargo 7434 (New Prospective) to M.K., an individual whose identity is known to the Grand Jury.

Overt Act No. 53:   On or about October 8, 2020, defendant MARD transferred $25,000 from Wells Fargo 7434 (New Prospective) to Wells Fargo 0001 (Blue One).

Overt Act No. 54:   On or about October 13, 2020, defendant MARD transferred $2,200 from Wells Fargo 7434 (New Prospective) to Wells Fargo 0001 (Blue One).

Overt Act No. 55:   On or about October 14, 2020, defendant MARD made five credit card payments totaling $1,185 from Wells Fargo 7434 (New Prospective).

Overt Act No. 56:   On or about November 16, 2020, defendant MARD made four credit card payments totaling $1,000 from Wells Fargo 7434 (New Prospective).

Overt Act No. 57:   On or about November 25, 2020, defendant MARD issued a $5,000 check from Wells Fargo 7434 (New Prospective) to M.K.

Overt Act No. 58:   On or about December 17, 2020, defendant MARD transferred $5,000 from Wells Fargo 7434 (New Prospective) to Wells Fargo 0001 (Blue One).

Overt Act No. 59:   On or about December 22, 2020, defendant MARD transferred $10,000 from Wells Fargo 7434 (New Prospective) to Premium Title of California by wire transfer to pay closing costs related to a property in West Covina, California.

Overt Act No. 60:   On or about January 11, 2021, defendant MARD transferred $4,075 from Wells Fargo 7434 (New Prospective) to Wells Fargo 6182 (MARD).

**ASAP Xpress Application**

Overt Act No. 61:   On or about July 24, 2020, defendant MELIK submitted, and caused to be submitted, to the SBA an EIDL loan application in ASAP Xpress's name, which application falsely claimed that ASAP had three employees.

COUNTS TWO THROUGH ELEVEN

[18 U.S.C. §§ 1343, 2(a)]

[DEFENDANTS MELIK AND MARD]

27.  The Grand Jury hereby realleges paragraphs 1 through 22 and paragraphs 25 through 26 of this Indictment as though fully set forth herein.

A.   THE SCHEME TO DEFRAUD

28.  Beginning in or about March 2020 and continuing through at least in or about July 2022, in Los Angeles County, within the Central District of California, defendant ARMAN MELIK, also known as "Arman Melikyan," "Armen Melikyan," and "Armen Melik," and defendant ARMEN MARD, together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA, Bank of America, and the United States Treasury as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of the SBA, Bank of America, and the United States Treasury, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

C.   USE OF THE WIRES

29.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants MELIK and MARD, together with others known and unknown to the Grand Jury, each aiding and abetting the other, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire and radio communication in interstate and foreign commerce:

19

| COUNT | DEFENDANT(S) | DATE | ITEMS TRANSMITTED BY WIRE |
|-------|--------------|------|---------------------------|
| TWO | MARD | March 31, 2020 | Application for EIDL loan in the name of Blue One submitted by means of interstate wires from the Central District of California to the SBA |
| THREE | MARD | July 22, 2020 | Wire transfer of approximately $149,000 from the SBA in EIDL loan proceeds into an account in the name of Blue One |
| FOUR | MELIK and MARD | June 2, 2020 | Application for PPP loan in the name of Avalon submitted by means of interstate wires from the Central District of California to Bank of America. |
| FIVE | MELIK and MARD | June 19, 2020 | Wire transfer of approximately $894,977 from Bank of America in PPP loan proceeds into a Bank of America account in the name of Avalon |
| SIX | MELIK and MARD | June 23, 2020 | Application for EIDL loan in the name of Avalon submitted by means of interstate wires from the Central District of California to the SBA |
| SEVEN | MELIK and MARD | June 29, 2020 | Wire transfer of approximately $110,400 from the SBA in EIDL loan proceeds into an account in the name of O.R. |

| EIGHT | MARD | July 12, 2020 | Application for EIDL loan in the name of V.B. submitted by means of interstate wires from the Central District of California to the SBA |
| NINE | MARD | July 29, 2020 | Wire transfer of approximately $66,900 from the SBA in EIDL loan proceeds into an account in the name of V.B. |
| TEN | MARD | July 12, 2020 | Application for EIDL loan in the name of New Prospective submitted by means of interstate wires from the Central District of California to the SBA |
| ELEVEN | MARD | July 29, 2020 | Wire transfer of approximately $144,600 from the SBA in EIDL loan proceeds into an account in the name of New Prospective |

//

//

COUNT TWELVE

[18 U.S.C. § 1956(h)]

[DEFENDANTS MELIK AND MARD]

A.   INTRODUCTORY ALLEGATIONS

30.   The Grand Jury hereby realleges paragraphs 1 through 22 and 25 through 26 of this Indictment as though fully set forth herein.

B.   OBJECTS OF THE CONSPIRACY

31.   Beginning on a date unknown but no later than in or about March 2020 and continuing through in or about July 2022, in Los Angeles County, within the Central District of California, defendant ARMAN MELIK, also known as "Arman Melikyan," "Armen Melikyan," and "Armen Melik," and defendant ARMEN MARD, knowingly conspired with each other, and with others known and unknown to the Grand Jury, to commit the following offenses against the United States:

a.   To knowingly conduct, attempt to conduct, and willfully cause others to conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, namely, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and, while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.   To knowingly engage, attempt to engage, and willfully cause others to engage and attempt to engage in monetary

transactions, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, namely, wire fraud, in violation of 18 U.S.C. § 1343, in violation of Title 18, United States Code, Section 1957.

C.    THE MANNER AND MEANS OF THE CONSPIRACY

32.    The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.    As described in paragraphs 1 through 22 of this Indictment, defendants MELIK and MARD would submit, and caused to be submitted, fraudulent applications to the SBA and Bank of America for EIDL and PPP loans on behalf of various entities and persons.

b.    Upon receiving EIDL and PPP loan disbursements, defendants MELIK and MARD would cause the money in the receiving accounts to be transferred by wire and checks to other accounts that they controlled in their own names and in other's names, to conceal the true nature, location, source, and control of the funds.

c.    Defendant MELIK and MARD, together with others known and unknown to the Grand Jury, would spend the EIDL and PPP loan proceeds, including transactions of a value greater than $10,000, for their own personal benefit and for the benefit of others, including for expenses prohibited under the requirements of the PPP and EIDL programs.

D.    OVERT ACTS

33.    In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants MELIK and MARD, together with others known and unknown to the Grand Jury, committed and willfully caused to be committed various overt acts within the

Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about June 19, 2020, defendants MELIK and MARD fraudulently caused Bank of America to transfer $894,977 in PPP loan funds to Bank of America 9653 (Avalon).

Overt Act No. 2:   On or about June 29, 2020, defendants MELIK and MARD caused a $22,500 check to be issued from Bank of America 9653 (Avalon) to N.M., an individual whose identity is known to the Grand Jury.

Overt Act No. 3:   On or about June 29, 2020, defendants MELIK and MARD fraudulently caused the SBA to wire $110,400 in EIDL funds to JPMC 1074 (O.R.).

Overt Act No. 4:   On June 29, 2020, defendants MELIK and MARD caused $10,500 to be transferred from JPMC 1074 (O.R.) to Wells Fargo 7418 (Blue One).

Overt Act No. 5:   On or about June 29, 2020, defendants MELIK and MARD caused a $10,450 check to be issued from JPMC 1074 (O.R.) to Blue One, which defendant MARD deposited into Wells Fargo 0001 (Blue One).

Overt Act No. 6:   On or about June 29, 2020, defendants MELIK and MARD caused a $12,350 check to be issued from JPMC 1074 (O.R.) to Blue One, which defendant MARD deposited into Wells Fargo 0001 (Blue One).

Overt Act No. 7:   On or about June 30, 2020, defendants MELIK and MARD caused a $10,500 check to be issued from JPMC 1074 (O.R.) to Templeton Hills.

Overt Act No. 8:    On or about June 30, 2020, defendants MELIK and MARD caused a $6,700 check to be issued from JPMC 1074 (O.R.) to Vamos Options.

Overt Act No. 9:    On or about July 3, 2020, defendant MARD caused a $4,000 check to be issued from Bank of America 9653 (Avalon) to V.B., which was deposited in USAA 2227 (V.B.).

Overt Act No. 10:    On or about July 6, 2020, defendants MELIK and MARD caused a $27,000 check to be issued from Bank of America 9653 (Avalon) to Cyber Technologies.

Overt Act No. 11:    On or about July 7, 2020, defendants MELIK and MARD caused a $28,000 check to be issued from Bank of America 9653 (Avalon) to V.G., an individual whose identity is known to the Grand Jury.

Overt Act No. 12:    On or about July 7, 2020, defendants MELIK and MARD fraudulently caused the SBA to wire $10,000 in EIDL advance funds to JPMC 1074 (O.R.).

Overt Act No. 13:    On or about July 8, 2020, defendants MELIK and MARD caused a $23,000 check to be issued from V.G.'s Ally Bank account to defendant MELIK.

Overt Act No. 14:    On or about July 8, 2020, defendant MELIK deposited a $23,000 check from V.G. into defendant MELIK's US Bank account ending in 0682 ("US Bank 0682").

Overt Act No. 15:    On or about July 8, 2020, defendants MELIK and MARD caused a $24,000 check to be issued from Bank of America 9653 (Avalon) to S.M., an individual whose identity is known to the Grand Jury.

Overt Act No. 16:    On or about July 10, 2020, defendant MARD issued a $13,800 check from Wells Fargo 0001 (Blue One) to defendant

MELIK.

Overt Act No. 17:   On or about July 10, 2020, defendant MELIK deposited a $13,800 check from Blue One, a $10,500 check from Templeton Hills, and a $6,700 check from Vamos Options into US Bank 0682 (MELIK).

Overt Act No. 18:   On or about July 10, 2020, defendant MELIK withdrew $8,000 in cash from US Bank 0692 (MELIK).

Overt Act No. 19:   On or about July 17, 2020, defendants MELIK and MARD caused a $23,750 check to be issued from Bank of America 9653 (Avalon) to Blue One.

Overt Act No. 20:   On or about July 23, 2020, defendants MELIK and MARD caused Cyber Technologies to issue a $27,000 check to defendant MELIK.

Overt Act No. 21:   On or about July 27, 2020, defendant MELIK deposited a $27,000 check from Cyber Technologies into US Bank 0682 (MELIK).

Overt Act No. 22:   On or about July 29, 2020, defendant MARD fraudulently caused the SBA to wire $66,900 in EIDL funds to USAA 2227 (V.B.).

Overt Act No. 23:   On or about August 3, 2020, defendant MARD fraudulently caused the SBA to wire $144,600 in EIDL funds to Wells Fargo 0063 (New Prospective).

Overt Act No. 24:   On or about August 4, 2020, defendant MARD transferred $14,700 from Wells Fargo 0063 (New Prospective) to Wells Fargo 0001 (Blue One).

Overt Act No. 25:   On or about August 6, 2020, defendants MELIK and MARD caused a $23,400 check to be issued from Bank of America

9653 (Avalon) to I.R., an individual whose identity is known to the Grand Jury.

Overt Act No. 26:   On or about September 9, 2020, defendants MELIK and MARD caused a $74,450 check to be issued from Bank of America 9653 (Avalon) to 84 Lumber.

Overt Act No. 27:   On or about September 18, 2020, defendants MELIK and MARD caused a $23,400 check to be issued from Bank of America 9653 (Avalon) to I.R.

Overt Act No. 28:   On or about November 10, 2020, defendants MELIK and MARD caused $11,000 check to be issued from Bank of America 9653 (Avalon) to V.G.

Overt Act No. 29:   On or about November 17, 2020, defendants MELIK and MARD caused a $11,700 check to be issued from Bank of America 9653 (Avalon) to I.R.

Overt Act No. 30:   On or about November 18, 2020, defendants MELIK and MARD caused S.M. to issue a $4,000 check to Blue One.

Overt Act No. 31:   On or about November 18, 2020, defendants MELIK and MARD caused S.M. to issue a $6,000 check to defendant MARD.

Overt Act No. 32:   On or about June 3, 2022, defendant MARD caused a $4,678.66 mortgage payment to be made from USAA 2227 (V.B.) for the Brockmont Residence.

//

//

COUNT THIRTEEN

[18 U.S.C. §§ 1957; 2(a), 2(b)]

[DEFENDANT MARD]

34.  The Grand Jury hereby realleges paragraphs 1 through 22 and paragraphs 25, 26, 29, 32, and 33 of this Indictment as though fully set forth herein.

35.  On or about October 8, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant ARMEN MARD, knowing that the funds involved represented the proceeds of some form of unlawful activity, knowingly engaged in and willfully caused others to engage in a monetary transactions,  in and affecting interstate commerce, of a value greater than $10,000, specifically the transfer of $25,000 from a Wells Fargo account ending in 7434 to a Wells Fargo account ending in 0001, and which funds, in fact, were derived from specified unlawful activity, namely, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

//

//

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1) and Title 28, United States Code, Section 2461(c)), in the event of any defendant's conviction of any the offenses set forth in any of Counts One through Eleven of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

        (a) all right, title, and interest in any and all property real or personal, constituting, or derived from, directly or indirectly, any proceeds traceable to the offenses; and

        (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of a defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(2)]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Eleven of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982(a)(1)]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Twelve through Thirteen of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   A property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, by any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be

31

ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any 12-month period.

A TRUE BILL

/S/
_____
Foreperson

BILAL A. ESSAYLI
Acting United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

DAVID LACHMAN
Assistant United States Attorney
National Security Division

DAVID Y. PI
Assistant United States Attorney
Major Frauds Section